IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: ) | |
|    R.B. NO. 2 LIMITED PARTNERSHIP ) | |
| ) | |
|    Debtor, ) | |
| ) | |
| ) | |
| ) | Civil Action No. 06-1331 |
| JARL INVESTMENTS, L.P., ) | |
| ) | |
|    Plaintiff, ) | BKCY. No. 06-22517-JAD |
| ) | |
|    -vs- ) | |
| ) | |
| R.B. NO. 2 LIMITED PARTNERSHIP, ) | |
| ) | |
|    Defendant. ) | |

AMBROSE, Chief District Judge.

## OPINION and ORDER OF COURT

    This appeal involves what appears to be a failed family enterprise. Debtor and Appellant R.B. No. 2 Limited Partnership ("R.B. No. 2") was formed for the purpose of operating the Red Bull Inn restaurant located on Campbell's Run Road in Pittsburgh, Pennsylvania. Appellee JARL Investments, L.P. ("JARL") owns the real property upon which R.B. No. 2 operates the Red Bull Inn restaurant. Various members of the Fleck family own varying percentages of R.B. No. 2 and JARL.

    While there are differences of opinion among the parties regarding how those percentages were acquired, and / or how R.B. No. 2 apparently began failing as a business, those facts are not germane to the issue before me. What is germane

1

is that, on November 24, 2004, Daniel Fleck, Randall Fleck and Janice Bioni ("the Dissident Limited Partners"), all of whom were limited partners of JARL and who together own 72% of JARL,[1] met and voted to remove Lois Fleck, their mother, as the remaining general partner of JARL.[2]  The Dissident Limited Partners explained that they believed Lois Fleck had breached her fiduciary duties toward JARL because she had failed to collect rent from R.B. No. 2 and / or evict R.B. No. 2 from the premises.[3]

Thereafter, the Dissident Limited Partners, on behalf of JARL, instituted an Eviction Complaint with Magistrate Judge Swearingen on or about April 18, 2005, seeking to remove R.B. No. 2 from the Campbell's Run Road property.  The Magistrate Judge awarded JARL possession of the property and the matter was appealed.  On or about May 20, 2005, the Honorable Judge Wettick of the Court of Common Pleas of Allegheny County, Pennsylvania, issued an Order requiring R.B. No. 2 to pay $15,254.69 in rent and other costs on a monthly basis, for the benefit of maintaining the supersedeas, thus preventing eviction during appeal.  The supersedeas was subsequently terminated when the Court learned that R.B. No. 2

---

[1] There is another limited partner, Larry Fleck, who did not vote to remove Lois.  Larry was apparently the individual who was actually running R.B. No. 2 and the Dissident Limited Partners charge that it was he who was mismanaging the business and causing its failure.

[2] Louis Fleck, Lois's husband and Daniel's, Randall's and Janice's father, had been the other general partner in JARL.  He was deceased at the time of Lois's removal.

[3] The Dissident Limited Partners contend that Section 10.2 of the JARL Partnership Agreement provided them with the authority to remove Lois Fleck as general partner.  The Debtor disagrees.  Construction of this provision is not before me, however, as the Bankruptcy Court did not rule upon its meaning.

had failed to make the appropriate rent payments in accordance with Judge Wettick's Order.  The funds held in escrow were then released to JARL.  R.B. No. 2's Preliminary Objections on the issue of the Dissident Limited Partner's standing to bring the eviction action were denied and, on the eve of the scheduled eviction, R.B. No. 2 filed the bankruptcy action.

JARL thereafter moved for relief from the bankruptcy's automatic stay provision pursuant to Section 36 of Title 11 of the United States Code.  See Docket No. 1-3.  More specifically, JARL sought an entry of an Order deeming the lease it characterized as previously expired relating to the Campbell's Run Road property to be rejected.  Counsel for R.B. No. 2 and JARL appeared before the Honorable Judge Deller on July 25, 2006 on the Motion and counsel argued their respective positions.  Ultimately, the Bankruptcy Court found that the Dissident Limited Partners had standing to bring the Motion for Relief from Stay as a derivative action, and that relief was appropriate.

R.B. No. 2 then filed the Notice of Appeal in the above captioned case.  After careful consideration, and for the reasons set forth below, the judgment of the Bankruptcy Court is affirmed.

### Standard of Review

A district court's appellate review of a bankruptcy court's decision is two-fold.  The bankruptcy court's findings of fact shall not be set aside unless clearly erroneous. Fellheimer, Eichen & Braverman, P.C. v. Charter Techs., Ins., 57 F.3d 1215, 1223 (3d Cir. 1995).  A bankruptcy court's legal conclusions, however, are subject to

plenary review. Manus Corp. v. NRG Energy, Inc., 188 F.3d 116, 122 (3d Cir. 1999).

## Analysis

I. *Standing*

R.B. No. 2's first argument focuses upon what it perceives to be the Dissident Limited Partner's lack of standing to act on behalf of JARL. See Docket No. 2, p. 9-15. R.B. No. 2's argument focuses solely upon construction of various provisions in JARL's Partnership Agreement. I find this argument does not merit reversal of the Bankruptcy Court's Order because the Bankruptcy Court did not base its finding of standing upon a construction of the Partnership Agreement. Rather, the Bankruptcy Court found standing to exist via a derivative action. See Docket No. 1-18, p. 33. R.B. No. 2 offers no argument regarding how the Bankruptcy Court's findings in this regard were erroneous.

Further, my review of the transcript from the oral argument on the Motion for Relief from Automatic Stay convinces me that, contrary to R.B. No. 2's arguments elsewhere in its Brief, the Bankruptcy Court did not require a hearing prior to ruling on the Motion because any factual findings made in connection with standing were based upon concessions by R.B. No. 2's counsel.

Thus, according to the Bankruptcy Court, a derivative action requires two things,[4] a colorable claim and either a refusal by the general partner[s] to bring the action or a demonstration that making a demand of the general partner[s] would

---

[4] Again, R.B. No. 2 has not argued that the Bankruptcy Court made errors of law regarding the requirements of a derivative action.

be futile.  As to the existence of a colorable claim, counsel for R.B. No. 2 conceded that the Dissident Limited Partners had a colorable claim.  The following exchange highlights that concession:

> THE COURT:... And the other component, that the claim is colorable.  I think that a fair reading of the motion for relief from stay is that the movants here contend that JARL's abatement of rent was somehow a breach of the fiduciary duty of the general partner.  Am I reading that right, Mr. Wissinger?
>
> MR. WISSINGER: That is absolutely correct, Your Honor. That's what we've been saying since we commenced the eviction proceedings.
>
> THE COURT: And tell me why now on the face of the pleadings that would not be a colorable claim?
>
> MR. KERR: Your Honor, that would be a colorable claim. We don't dispute that.
> THE COURT: It would be a colorable claim?
>
> MR. KERR: Yes, Your Honor.

See Docket No. 118, p. 31.  As to the other component of a derivative action, the Bankruptcy Court correctly noted that Section 8591 of Title 15 of Pa. C.S.A. provides:

> [a] limited partner may bring an action in the right of a limited partnership to recover a judgment in its favor if general partners with authority to do so have refused to bring the action **or if an effort to cause those general partners to bring the action is not likely to succeed.**

See 15 Pa. C.S.A. §8591 (emphasis added).  Counsel for R.B. No. 2 (of which Lois Fleck is the sole general partner) conceded that "an effort to cause those general partners

5

to bring the action [would not be] likely to succeed."[5]

Accordingly, the Bankruptcy Court's decision regarding standing is affirmed.

II. *The Merits of Relief from Stay*

In addition to challenging the Bankruptcy Court's ruling regarding standing, R.B. No. 2 challenges the Bankruptcy Court's ruling regarding the merits - the granting of the relief from the automatic stay. Though the Court did not issue a written Opinion, the Court did explain the basis for its decision on the record during oral argument on that same date:

> THE COURT: Okay. Well, I'm going to enter an order granting relief from the automatic stay. I think what I hear is, Mr. Kerr, you do not dispute that [the] lease was actually a month-to-month, that a notice of eviction was given prior to the commencement of this case, well prior, two years prior, over a year. Section 108 of the Bankruptcy Code can't be used to essentially revive a right which didn't exist as of the filing of the case. That's a Third Circuit case called Counties Contracting I believe it is. And so essentially it appears that this lease had expired by its own terms prior to the filing of the case, and that alone in and of itself would be cause for granting relief from the automatic stay. But it also appears that the debtor – even if the lease was viable, the debtor did not promptly perform its obligations arising from and after the petition date, and I also question whether or not the property is necessary for an effective reorganization given the extensive acrimony between the limited and general partners. And so for all of those reasons, I'm going to enter the order granting relief from stay.

---

[5] Referencing the above emphasized portion of the statute, the Bankruptcy Court instructed counsel to tell the Court "why the latter part of that sentence doesn't apply to these limited partners' efforts here." See Docket No. 1-18, p. 32. Counsel for R.B. No. 2 responded:
> I understand your point, Your Honor. Is Mrs. Fleck going to invite them to sue her? You know, necessarily – not necessarily is that the case? **No. I agree with you.**

See Docket No. 1-18, p. 33.

<u>See</u> Docket No. 1-18, p. 37.  R.B. No. 2 has not demonstrated that the Bankruptcy Court's ruling in this regard was based on clearly erroneous findings of fact, errant conclusions of law or an abuse of discretion.  Indeed, the factual underpinnings of the Bankruptcy Court's ruling are concessions made by counsel for R.B. No. 2[6] and R.B. No. 2's Brief on appeal does not contain any challenge to the Bankruptcy Court's legal analysis.  Because the Bankruptcy Court's decision was based upon concessions by R.B. No. 2, there was no need to have a hearing for the introduction of additional evidence. Consequently, the Bankruptcy Court's ruling on the merits on the Motion for Relief from Stay is affirmed.

* * * * * * * * * * * * * * * * * * * * *

---

[6] Counsel for R.B. No. 2 did state that the lease between JARL and R.B. No. 2 pertaining to the Campbell's Run Road property was on a month-to-month tenancy. <u>See</u> Docket No. 1-18, p. 22.  As such, no hearing or evidence was necessary on this fact.  Further, the undisputed evidence reveals that the eviction action was instituted in April of 2005.  Again, no hearing or evidence was necessary in this regard. The Bankruptcy Court's alternative findings regarding R.B. No. 2's failure to pay rent were also based upon concessions and / or admissions made by counsel for R.B. No. 2 during oral argument:

> THE COURT: Well, Mr. Kerr, why is – 365(d), I believe (3) of the Bankruptcy Code requires all debtors to promptly perform their obligations arising under nonresidential leases.  Why hasn't your client been making rent payments?
> MR. KERR: Your Honor, we do not dispute that our client is incorrect in not making payments of the funds or making rent payments.
> THE COURT: Why wouldn't that be cause in and of itself for me to relief - to grant relief from the automatic stay?
> MR. KERR: Our position, Your Honor, as is set forth in our brief, which you've obviously familiarized yourself with, is that simply the limited partners of JARL do not have standing to bring this suit …

<u>See</u> Docket No. 1-18, p. 10. This exchange clearly indicates that R.B. No. 2 conceded that it had not performed its obligations under the Bankruptcy Code regarding rent payments, but that it believed such obligations could be excused because the Dissident Limited Partners lacked the standing to file the Motion for Relief from Stay.  As stated above, the Bankruptcy Court properly found that the Dissident Limited Partners did, indeed, have standing.

## ORDER OF COURT

AND NOW this **16th** day of March, 2007, after careful consideration, and for the reasons set forth in the accompanying Opinion, it is Ordered that the Bankruptcy Court's Order dated July 25, 2006 granting relief from stay and deeming the lease to be rejected is AFFIRMED.

BY THE COURT:


/S/   Donetta W. Ambrose

Donetta W. Ambrose,
Chief U. S. District Judge